**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GABRIEL EDWARDS,** | : | **CIVIL NO. 1:15-CV-737** |
| | : | |
| **Petitioner** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DAVID J. EBBERT, WARDEN,**[1] | : | |
| | : | |
| **Respondent** | : | |

**<u>MEMORANDUM</u>**

Presently before the court is a petition for writ of habeas corpus pursuant to

28 U.S.C. § 2241 filed by petitioner Gabriel Edwards ("Edwards"), an inmate

currently confined at the United States Penitentiary, in Lewisburg, Pennsylvania

("USP Lewisburg").  (Doc. 1).  He contends that his due process rights were violated

in the context of a disciplinary hearing held at the United States Penitentiary, in

Pollock, Louisiana ("USP Pollock").  The petition is ripe for disposition and, for the

reasons that follow, will be denied.

**I.    <u>Background</u>**

On September 25, 2006, Edwards was sentenced in the United States District

Court for the Middle District of Florida to a 120-month term of imprisonment for

conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana

---

[1] Pursuant to 28 U.S.C. § 2243, the proper respondent in a habeas action is "the person having custody of the person detained."  Therefore, the Clerk of Court will be directed to substitute David J. Ebbert, Warden at USP Lewisburg, as the sole respondent in this action.

and a quantity of cocaine hydrochloride.  (Doc. 8-2, Ex. 1, Declaration of Jennifer

Knepper, BOP Attorney Advisor ("Knepper Decl."), ¶ 3).  His projected release date

is August 17, 2019, via good conduct time.  (Id.; Doc. 8-2, Ex. 1, Attach. A, Public

Information Inmate Data).

In the instant petition, Edwards claims that his rights were violated during a

disciplinary hearing held at USP Pollock, where he was found guilty of a code 228

violation for tattooing or self-mutilation.  (Doc. 1).  Specifically, Edwards challenges

the sufficiency of the evidence relied on by the discipline hearing officer ("DHO") to

find him guilty of a code 228 violation.  (Id. at 6).  Edwards admits that he was in

possession of a tattoo gun.  (Id. at 3-5; Doc. 9, at 2).  However, he argues that he

could not be found guilty of tattooing because the gun was inoperable and he had

no new tattoos.  (Id.)  For relief, Edwards seeks expungement of the disciplinary

finding and restoration of his good conduct time.  (Doc. 1, at 6).

There is no dispute that Edwards exhausted his administrative remedies

prior to initiating this action.  (Doc. 8, at 3 n.2).

## II.    Discussion

On January 2, 2014, Edwards was served with incident report number

2532897, charging him with a code 228 violation for "tattooing or self-mutilation."

(Doc. 8-2, at 7, Incident Report).  The incident is described as follows:

> On January 1, 2014, at approximately 11:13 pm, while making rounds I
> saw [an] inmate tattooing inmate Edwards 26283-018.  I confiscated the
> tattoo-gun through the food slot.  This is a violation of code 228 –
> Tattooing or self[-]mutilation.

(Id.)

On January 2, 2014, Lieutenant P. Omelson gave Edwards advanced written notice of the charges against him.  (Doc. 8-2, at 8).  During the investigation, Edwards was advised of his right to remain silent, he indicated that he understood his rights, and stated "[t]he tattoo gun is mine it is not for my roommate."  (Id.)

On January 7, 2014, Edwards appeared before the Unit Discipline Committee ("UDC"), and had "no comment" regarding the incident.  (Doc. 8-2, at 7).  Due to the severity of the offense, the UDC referred the incident report to the DHO with a recommendation that sanctions be imposed.  (Id.)  A staff member informed Edwards of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form.  (Doc. 8-2, at 10, Inmate Rights at Discipline Hearing).  Edwards was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form.  (Doc. 8-2, at 9, Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)).  Edwards waived his right to have a staff member represent him and elected not to call any witnesses.  (Id.)

On February 7, 2014, Edwards appeared for a hearing before DHO R. Tolbert.  (Doc. 8-2, at 11-13, DHO Report).  During the February 7, 2014 hearing, the DHO confirmed that Edwards received advanced written notice of the charges on January 2, 2014, that he had been advised of his rights before the DHO on January 7, 2014, and that Edwards waived his right to a staff representative and did not request a witness.  (Id. at 11).  The DHO again advised Edwards of his rights, Edwards indicated that he understood them, and that he was ready to proceed with

the hearing.  (Id.)  Edwards made the following statement regarding the charges, "I

wasn't tattooing."  (Id.)

After consideration of the evidence, the DHO found that Edwards committed

the prohibited act of tattooing or self-mutilation.  (Id. at 12).  The DHO explained his

findings as follows:

> The DHO's findings were based on the eyewitness' account of the
> reporting officer on January 1, 2014, at approximately 11:15 PM, while
> conducting rounds, the officer saw [an] inmate tattooing inmate
> Edwards, #26283-018.  The tattoo gun was confiscated through the
> food slot.
>
> During the DHO Hearing, inmate Edwards stated, "I wasn't tattooing."
>
> Based on the reporting officer's account of seeing [an] inmate tattoo
> inmate Edwards, I find this incident report to be accurate and the
> charge of Tattooing or Self-Mutilation, Code 228, to be valid.

(Id.)

As such, the DHO sanctioned Edwards with fourteen (14) days disallowance

of good conduct time, and thirty (30) days loss of TruLincs[2].  (Id.)  The DHO

documented his reasons for the sanctions given as follows:

> The sanction against Good Conduct Time was used to comply with the
> mandatory sanctioning guidelines for inmates sentenced under the
> Prison Litigation Reform Act (PLRA).
>
> The sanction involving the loss of e-mail privileges was taken to
> enforce the standard of inmates being held responsible for their
> actions.

(Id. at 13).  Edwards was advised of his appeal rights at the conclusion of the

hearing.  (Id.)

---

[2] Trulincs is the Federal Bureau of Prison's prisoner electronic
communications service.  https://www.bop.gov/inmates/trulincs.jsp

Edwards' sanctions included the loss of good conduct time, therefore he has identified a liberty interest in this matter.  The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides:  "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Federal inmates possess a liberty interest in good conduct time.  See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  Wolff, 418 U.S. at 563-67.  The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board."  Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992).  If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff.  Hill, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court.  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).  Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful.  28 C.F.R. § 541.5.  The incident is then referred to the UDC for an initial hearing pursuant to § 541.7.  The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays."  28 C.F.R. § 541.7(c).  This period may be extended if the incident is being investigated for possible criminal prosecution.  28 C.F.R. § 541.4(c).  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  28 C.F.R. § 541.7(f).  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing.  28 C.F.R. § 541.7(a), (g).  The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement.  28 C.F.R. § 541.8(c).  The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses.  28 C.F.R. § 541.8(d), (e), (f).  Following the hearing, the inmate will receive a written copy of the DHO's decision.  28 C.F.R. § 541.8(h).

In the instant case, it is clear that Edwards was afforded all of the required procedural rights set forth in <u>Wolff</u>.  He received timely notice of the incident report.  He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf.  Edwards declined to call any witnesses and presented no evidence in support of his position.  At the conclusion of the hearing, Edwards received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision.  Edwards was also notified of his right to appeal.

Since Edwards was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO.  The record clearly reveals the existence of evidence to allow the DHO to conclude that Edwards was guilty of the charge.  The DHO relied upon the eyewitness' account of the incident and the reporting officer's incident report. Based upon this evidence, and without any contradictory evidence submitted by Edwards, except his self-serving denial, the court finds that Edwards' due process rights were not violated by the determination of the DHO.

Finally, the court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.*  Edwards was found guilty of a 200-level, high category prohibited act.  Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 200-level offenses:

A.      Recommend parole date rescission or retardation.
B.      Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1     Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C.      Disciplinary segregation (up to 6 months).
D.      Make monetary restitution.
E.      Monetary fine.
F.      Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G.      Change housing (quarters).
H.      Remove from program and/or group activity.
I.      Loss of job.
J.      Impound inmate's personal property.
K.      Confiscate contraband.
L.      Restrict to quarters.
M.      Extra duty.

28 C.F.R. § 541.3 (Table 1).  Thus, the sanctions imposed by the DHO in this

instance were consistent with the severity level of the prohibited act and within the

maximum available to the DHO.  Accordingly, the petition will be denied as to

incident report number 2532897.

8

**III.    Conclusion**

Based on the foregoing, the petition for writ of habeas corpus will be denied.

An appropriate order will issue.

                                        /S/ CHRISTOPHER C. CONNER
                                        Christopher C. Conner, Chief Judge
                                        United States District Court
                                        Middle District of Pennsylvania

Dated:        March 16, 2016